No. 13-35251

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

LOREDANA RANZA,

*Appellant,*

v.

NIKE, INC. and NIKE EUROPEAN OPERATIONS NETHERLANDS B.V.,

*Appellees.*

_____

On Appeal from the United States District Court
for the District of Oregon
Hon. Anna J. Brown
Case No. 3:10-CV-01285-AC

_____

## REDACTED APPELLEES' ANSWERING BRIEF
## (PUBLIC COPY)

_____

LEONARD J. FELDMAN (SB #20961)          AMY JOSEPH PEDERSEN (SB #853958)
CHARLES E. GUSSOW (SB # 5016357)        LAURA E. ROSENBAUM (SB #110061)
Stoel Rives LLP                         Stoel Rives LLP
600 University Street, Suite 3600       900 SW Fifth Avenue, Suite 2600
Seattle, WA 98101                       Portland, OR  97204
Telephone:  (206) 624-0900              Telephone:  (503) 224-3380
Facsimile:  (206) 386-7500              Facsimile:  (503) 220-2480

Attorneys for Appellees

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Ninth Circuit Rule 26.1, Appellees represent that (a) Defendant-Appellee Nike, Inc. has no parent company and no publicly traded company owns 10% or more of its stock, and (b) Defendant-Appellee Nike European Operations Netherlands B.V. is a wholly-owned subsidiary of Nike, Inc.

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ...................................................................1
II.   STATEMENT OF JURISDICTION ...................................3
III.  ISSUES PRESENTED FOR REVIEW .............................3
IV.   STATEMENT OF FACTS ...............................................4
      A.   Factual Background ...............................................4
      B.   Procedural Background ..........................................7
V.    SUMMARY OF ARGUMENT .........................................9
VI.   ARGUMENT ...................................................................12
      A.   Standard Of Review ............................................12
      B.   The District Court Correctly Dismissed Ranza's Claims
           Because (a) Neither Title VII Nor The ADEA Is Applicable
           Here Unless Nike Controls NEON'S Operations And (b) Ranza
           Cannot Satisfy The Applicable Control Test. ...................13
           1.   Ranza Cannot Satisfy, And Did Not Satisfy, The
                Controlling Four-Part Test For Determining Whether
                Title VII And The ADEA Apply Here. ...................13
           2.   Ranza's Arguments Regarding The Applicability Of Title
                VII And The ADEA Are Both Legally and Factually
                Flawed. ...................................................21
      C.   If This Court Does Not Affirm The District Court's Dismissal
           Of Ranza's Claims Based On Ranza's Failure To Establish That
           Title VII And The ADEA Are Applicable Here, It Should
           Affirm Based On Lack Of Personal Jurisdiction, Failure To
           Exhaust Administrative Remedies, And/Or Forum Non
           Conveniens Grounds. ..............................................28
           1.   The District Court Correctly Dismissed Ranza's Claims
                Against NEON Based On Lack Of Personal Jurisdiction. ......28
                a.   The District Court Correctly Found That The
                     Exercise Of Personal Jurisdiction Over NEON Is
                     Not Reasonable. ........................................28

i

b.    The District Court Correctly Found That NEON Is Not Subject To Jurisdiction In Oregon Because It Does Not Have Continuous And Systematic Contacts With Oregon. ..................................37

i.    Because NEON's Oregon Activities Do Not Approximate Physical Presence In Oregon, It Is Not Subject To General Jurisdiction There. ...................................................37

ii.    Ranza's Arguments Regarding NEON's Oregon Contacts Are Factually And Legally Insufficient To Establish General Jurisdiction. ..........................................39

iii.    Ranza's Attempt To Establish That NEON Can Be Subject To General Jurisdiction In Oregon Based On Nike's Contacts With The Forum Similarly Fails. ..........................41

2.    Ranza's Claims Against Nike Are Barred Because She Failed To Timely Exhaust Her Administrative Remedies Before The EEOC. .................................47

3.    Ranza's Claims Against NEON And Nike Are Also Subject To Dismissal On Forum Non Conveniens Grounds. .....................................................52

D.    Ranza's Remaining Arguments – Regarding Her Motion To Supplement The Record And Amend The Complaint On Remand – Do Not Require Reversal Either. .....................55

1.    Even If Ranza Had Preserved Her Argument Regarding The Magistrate Judge's Ruling Denying Her Motion To Supplement The Record (Which She Did Not), The District Court Did Not Abuse Its Discretion Or Otherwise Err In Upholding That Ruling. ...............55

2.    The Court Need Not Address Ranza's Argument That She Should Be Permitted To Amend Her Complaint On Remand Because No Such Remand Is Warranted Here. ........57

VII.    CONCLUSION. ............................................................57

# TABLE OF AUTHORITIES

**Cases**

*Ahlmeyer v. Nev. Sys. of Higher Educ.*,
  555 F.3d 1051 (9th Cir. 2009) ........................................................... 13

*Amoco Egypt Oil. Co. v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) ........................................................... passim

*Asahi Metal Industry Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987) ..................................................................... passim

*Balut v. Loral Elec. Sys.*,
  988 F. Supp. 339 (S.D.N.Y. 1997), *aff'd on other grounds*, 166 F.3d
  1199 (2d Cir. 1998) ........................................................................ 16

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002) ............................................................ 26

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................ 44

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ........................................................................ 13

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) ..................................................... passim

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ..................................................... 47, 52

*Ctr. for Biological Diversity v. Salazar*,
  706 F.3d 1085 (9th Cir. 2013) .......................................................... 12

*Denty v. SmithKline Beecham Corp.*,
  109 F.3d 147 (3d Cir. 1997) ............................................................ 24

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ....................................................... passim

# TABLE OF AUTHORITIES

*Donatelli v. Nat'l Hockey League*,
  893 F.2d 459 (1st Cir. 1990)..............................................................44

*EEOC v. Con-Way, Inc.*,
  No. 06-1337-MO, 2007 WL 2610367 (D. Or. Sept. 4, 2007) ...........16

*EEOC v. National Education Ass'n*,
  422 F.3d 840 (9th Cir. 2005) .............................................................51

*Ellis v. Bhd. of Ry., Airline & S.S. Clerks*,
  685 F.2d 1065 (9th Cir. 1982), *aff'd in relevant part*, 466 U.S. 435
  (1984).................................................................................................12

*Evans v. McDonald's Corp.*,
  936 F.2d 1087 (10th Cir. 1991) .........................................................19

*Fed. Express Corp. v. Holowecki*,
  552 U.S. 389 (2008)...........................................................................48

*Fields v. Sedgwick Associated Risks, Ltd.*,
  796 F.2d 299 (9th Cir. 1986) ......................................................passim

*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) ......................................................passim

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) .....................................................40, 41

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011).................................................................37, 38

*Helicopteros Nacionales De Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984).....................................................................40, 41

*Herman v. Blockbuster Entm't Grp.*,
  18 F. Supp. 2d 304 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) .........16

*In re Chocolate Confectionary Antitrust Litigation*,
  674 F. Supp. 2d 580 (M.D. Pa. 2009)................................................45

TABLE OF AUTHORITIES

PAGE

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945)..........................................................................................29

*Johnson v. Flowers Industries, Inc.,*
814 F.2d 978 (4th Cir. 1987) ...............................................................passim

*Kang v. U. Lim Am., Inc.,*
296 F.3d 810 (9th Cir. 2002) ....................................................................19, 22

*Kaplan v. Int'l Alliance of Theatrical & Stage Employees,*
525 F.2d 1354 (9th Cir. 1975) ...................................................................50, 51

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
394 F.3d 1143 (9th Cir. 2004) ............................................................43, 44, 45

*Laughon v. Int'l Alliance of Theatrical Stage Employees,*
248 F.3d 931 (9th Cir. 2001) ............................................................................50

*Leishman v. Radio Condenser Co.,*
167 F.2d 890 (9th Cir. 1948) ............................................................................56

*Levine v. Reader's Digest Ass'n, Inc.,*
No. 06 CIV. 590 (CLB), 2007 WL 4241925 (S.D.N.Y. Nov. 30, 2007) ...........17

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
583 F.3d 656 (9th Cir. 2009) ...............................................................36, 53, 54

*Lueck v. Sundstrand Corp.,*
236 F.3d 1137 (9th Cir. 2001) .........................................................................53

*Lusk v. Foxmeyer Health Corp.,*
129 F.3d 773 (5th Cir. 1997) ....................................................................15, 19

*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,*
556 F.2d 975 (9th Cir. 1977) ...........................................................................55

*Nat'l R.R. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002)..........................................................................................48

# TABLE OF AUTHORITIES

*NLRB v. Don Burgess Constr. Corp.*,
    596 F.2d 378 (9th Cir. 1979) .........................................................................22

*Occidental Life Ins. Co. of Cal. v. EEOC*,
    432 U.S. 355 (1977)...................................................................................48

*Ortez v. Washington County*,
    88 F.3d 804 (9th Cir. 1996) ......................................................................51

*Pac. Atl. Trading Co. v. M/V Main Express*,
    758 F.2d 1325 (9th Cir. 1985) ..................................................................33

*Paige v. California*,
    102 F.3d 1035 (9th Cir. 1996) ..................................................................50

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..................................................................................53

*Rajoppe v. GMAC Corp. Holding Corp.*,
    No. 05-2097, 2007 WL 846671 (E.D. Pa. Mar. 19, 2007) .............8, 17, 21, 22

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) ....................................................................30

*Sameena Inc. v. U.S. Air Force*,
    147 F.3d 1148 (9th Cir. 1998) ..................................................................13

*Sandoval v. Am. Bldg. Maint. Indus., Inc.*,
    578 F.3d 787 (8th Cir. 2009) ....................................................................22

*Schnellbaecher v. Baskin Clothing Co.*,
    887 F.2d 124 (7th Cir. 1989) ..............................................................49, 50

*Shekoyan v. Sibley Int'l*,
    409 F.3d 414 (D.C. Cir. 2005)..................................................................24

*Simpson v. Lear Astronics Corp.*,
    77 F.3d 1170 (9th Cir. 1996) ....................................................................55

TABLE OF AUTHORITIES

PAGE

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)............................................................52

*Sosa v. Hiraoka*,
    920 F.2d 1451 (9th Cir. 1990) ..........................................51

*SSL Ams., Inc. v. Mizuho Medy Co., Ltd.*,
    358 F. App'x 839 (9th Cir. 2009) .....................................46

*Stache v. Int'l Union of Bricklayers & Allied Craftsmen, AFL-CIO*,
    852 F.2d 1231 (9th Cir. 1988) .....................................49, 50

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ..........................................50

*Tatum v. Everhart*,
    954 F. Supp. 225 (D. Kan. 1997)......................................16

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ...................................passim

*Uston v. Hilton Casinos, Inc.*
    564 F.2d 1218 (9th Cir. 1977) ..........................................42

*Valladolid v. Pac. Operations Offshore, LLP*,
    604 F.3d 1126 (9th Cir. 2010) ..........................................23

*Walters v. Metro. Educ. Enters., Inc.*,
    519 U.S. 202 (1997)...........................................................18

*Watson v. Gulf & W. Indus.*,
    650 F.2d 990 (9th Cir. 1981) ............................................17

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...........................................................29

# TABLE OF AUTHORITIES

PAGE

**Statutes**

29 U.S.C. §621 *et seq.* (1967)
(ADEA).............................................................................passim

29 U.S.C. § 623(h)(1)........................................................................15

29 U.S.C. § 623(h)(2)........................................................................14

29 U.S.C. § 623(h)(3)...................................................................15, 23

29 U.S.C. § 626(d)(1)...................................................................48, 49

29 U.S.C. § 633(b).............................................................................48

42 U.S.C. § 200e *et seq.* (1964)
(Title VII).......................................................................passim

42 U.S.C. § 2000e-1(c)(1)..................................................................14

42 U.S.C. § 2000e-1(c)(2)..................................................................14

42 U.S.C. § 2000e-1(c)(3).............................................................15, 23

42 U.S.C. § 2000e-2..........................................................................14

42 U.S.C. § 2000e-3..........................................................................14

42 U.S.C. § 2000e-5(b).......................................................................48

42 U.S.C. § 2000e-5(e)(1).............................................................48, 49

**Rules**

Fed. R. Civ. P. 12(b)(2).......................................................................7

Fed. R. Civ. P. 12(b)(6).......................................................................7

Fed. R. Civ. P. 72(a).........................................................................55

Or. R. Civ. P. 4 L. ...........................................................................37

# TABLE OF AUTHORITIES

PAGE

**Regulations**

29 C.F.R. § 1601.12(a)(2) ...........................................................................52

29 C.F.R. § 1601.12(b) ...............................................................................52

**Other Authorities**

S. Rep. No. 98-467, *reprinted in* 1984 U.S.C.C.A.N. 3000 ....................................24

# I.   INTRODUCTION

The district court in this matter correctly dismissed Plaintiff-Appellant Loredana Ranza's claims for sex discrimination/retaliation and age discrimination both because it lacked personal jurisdiction over Defendant-Appellee Nike European Operations Netherlands B.V. ("NEON") and because there was no statutory basis for Ranza's claims.

Ranza filed this lawsuit only *after* she failed to establish her claims in an *appropriate* forum. As an employee of NEON, a Dutch limited liability company, Ranza was entitled to – *and did* – pursue claims against NEON in the Dutch legal system. A Dutch court reviewed NEON's termination decision and concluded that there was no basis to find that NEON did not have "good cause" to terminate her Dutch employment contract. Ranza also pursued her discrimination claims against NEON before the Dutch Equal Treatment Commission, which concluded that there was no basis to find discriminatory treatment. Then and only then did Ranza assert her claims against NEON in the United States.

The district court in this matter correctly concluded that Oregon is not a proper forum in which to litigate (or relitigate) Ranza's claims. NEON does not employ anyone in Oregon, does not own or lease property in Oregon, and does not solicit business in Oregon. And particularly given the previous litigation in the Netherlands, it would not be reasonable to exercise personal jurisdiction over

NEON.  Nor does it matter that NEON's parent company, Defendant-Appellee

Nike, Inc., is headquartered in Oregon, as this Court has squarely held that  "a

parent corporation's ties to a forum do not create jurisdiction over the subsidiary."

*Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302 (9th Cir. 1986).  The

district court correctly concluded that it lacked personal jurisdiction over NEON.

Even if Ranza could establish personal jurisdiction, there is no statutory

basis for the claims against NEON or Nike.  Ranza's claims are premised on Title

VII of the Civil Rights Act ("Title VII") and the Age Discrimination in

Employment Act ("ADEA").  Both statutes apply to a foreign corporation's

employment of a U.S. citizen in a foreign workplace *if and only if* a domestic

corporation "controls" the foreign corporation.  Because Ranza cannot satisfy the

applicable control test, Title VII and the ADEA do not apply here.  Thus, the

district court correctly dismissed Ranza's lawsuit because she could not state a

claim against NEON or Nike.  Because this issue is wholly dispositive, it is

addressed first in the argument below.

Finally, several other issues are also presented on appeal.  Ranza claims that

the district court erred in upholding the magistrate judge's ruling denying her

motion to supplement the record.  Even if Ranza had properly preserved that

argument, which she did not, the district court did not abuse its discretion or

otherwise err in upholding the magistrate judge's ruling.  Ranza also claims that

she should be permitted to amend her complaint if the matter is remanded. But remand is not warranted here. And lastly, even if the Court were to conclude that the district court erred in dismissing Ranza's claims for the reasons stated, the Court can also affirm on two alternative grounds: (a) forum non conveniens and (b) failure to exhaust administrative remedies. For all these reasons, the Court should affirm.

## II. STATEMENT OF JURISDICTION

Appellees agree that the Court has subject matter jurisdiction regarding this appeal.

## III. ISSUES PRESENTED FOR REVIEW

1.     Whether the district court correctly dismissed Ranza's claims against NEON and Nike because (a) neither Title VII nor the ADEA is applicable here unless Nike controls NEON's operations and (b) Ranza cannot satisfy the applicable control test.

2.     Whether the district court correctly dismissed Ranza's claims against NEON for lack of jurisdiction because (a) NEON does not do business in the forum state, (b) Nike's ties to Oregon are irrelevant for purposes of establishing general jurisdiction over its foreign subsidiary, and (c) it would not in any event be reasonable to exercise personal jurisdiction over NEON.

3.     Whether the Court should affirm the district court's judgment in favor of Nike on the alternative ground that Ranza failed to timely exhaust her administrative remedies as required by Title VII and the ADEA.

4.     Whether forum non conveniens provides an alternative ground to affirm the district court's judgment in favor of both NEON and Nike because the Netherlands provides an adequate alternative forum, relevant evidence and material witnesses are in the Netherlands, relevant events took place there, and Oregon has no interest in relitigating the dispute.

5.     Whether the district court erred in denying Ranza's motion to supplement the record where (a) Ranza failed to timely object to the magistrate judge's order denying that motion, and (b) the magistrate judge's ruling was not in any event erroneous.

6.     Whether, if the matter is remanded to the district court, the Court should vacate the district court's ruling denying Ranza's motion to amend her complaint.

## IV.   STATEMENT OF FACTS

### A.   Factual Background

Nike is a company headquartered in Beaverton, Oregon that designs, develops, markets, and sells footwear, apparel, and sports equipment.  ER 290, 304, 330.  In addition to directly marketing goods for sale, Nike owns a number of

foreign subsidiaries to which it licenses its brand and trademarks.  ER 304-07.

NEON is one such indirectly owned subsidiary.  ER 189-96, 266, 623. ██

██████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ ER 260-64, 279; SER 4-5.  Instead, ██████

████████████████████████████████████████████████ ER

1034, 1041; SER 4.  Its primary business is the sale of footwear, apparel, and

sports equipment in Europe.  SER 3.

Ranza worked for NEON in the Netherlands.  ER 3. ████████

████████████████████████████████████████████████████████

██████████████████████████ ER 3, 867; SER 6. ████████████

████████████████████████████████████████████████████████

████████████████████████████ ER 867-68, 1048. ████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████ ER 868, 1000. ████████████████████████████████

████████████████████████████████ ER 868, 1001. ██

████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.*

As a condition of this dismissal, NEON paid Ranza more than $200,000 based on

the determination that the reason for the termination was "neutral" (*i.e.*, not to be blamed on the employer or employee).  SER 7.

On September 1, 2008, Ranza, represented by Dutch counsel, petitioned the Netherlands Equal Treatment Commission ("ETC") to investigate whether NEON had discriminated against her on the basis of sex.  SER 9.  Six weeks later, she submitted an additional petition adding age as a suspected basis of discrimination. *Id.*  The ETC conducted discovery, hired an expert, and held a hearing to investigate Ranza's claims.  SER 6.  It closed its investigation on December 24, 2009.  SER 9.  On June 11, 2010, the ETC determined that NEON neither discriminated against Ranza on the basis of her age or sex nor violated Dutch law prohibitions against victimization.  SER 8-22.

Ranza next pressed her claim of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

SEALED SER 35-36.

SEALED SER 43-44.

SEALED SER 45-46.

SEALED SER 47.

**B.**  **Procedural Background**

On October 18, 2010, after a court in the Netherlands had determined that NEON could properly dismiss Ranza, the Netherlands ETC had concluded that NEON had acted lawfully under Dutch law, and the United States EEOC had dismissed her charge against NEON and Nike, Ranza filed a complaint in federal district court in Oregon alleging discrimination/retaliation claims under Title VII and the ADEA.  ER 1206.

NEON and Nike moved to dismiss the suit (i) for lack of personal jurisdiction over NEON, (ii) because Title VII and the ADEA did not apply to NEON's employment of Ranza in the Netherlands, (iii) for failure to exhaust administrative remedies, and (iv) on forum non conveniens grounds.  ER 6-8. Although the motion was styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Ranza immediately requested wide-ranging discovery (documents and depositions) so that she could respond to the motion.  Dkts. 3, 9, 33, 39-42, 51, 58, 78-79, 82.  Both NEON and Nike complied with those discovery requests.  ER 172, 188, 199, 202, 265-82, 284-86, 306.

 In it, she cited extensively to Nike's and NEON's documents and deposition testimony.  ER 64-159.  ███████████████████████████████████

███████ Dkts. 98-102, 104-07. ██████████████████████████



ER 65-69, 125-26, 142.[1]

ER 1042-1110.

At the conclusion of briefing and related discovery, the magistrate judge heard oral argument and ultimately issued his Findings and Recommendation.

ER 1186.

ER 1187.

ER 1217.

The district court adopted the magistrate judge's recommendation that Ranza's claims be dismissed. Summarizing its analysis regarding "personal jurisdiction and Plaintiff's ability to state a claim against Defendants," the court

---

[1] ER 125-26; Dkt. 137, at 59.

stated: "The Court … has reviewed the pertinent portions of the record *de novo* and does not find any error in the Magistrate Judge's Findings and Recommendation." ER 1295. The court likewise "reviewed the pertinent remaining portions of the record *de novo*" and did "not find any error" in the magistrate judge's earlier denial of Ranza's motion to supplement the record. ER 1297-98.

That left a single issue: whether Ranza should be permitted to file an amended complaint alleging discrimination on the basis of disability, an issue that the magistrate judge had decided. ER 1298. Following the district court's ruling and upon further review, the district court denied Ranza's motion to file an amended complaint because it determined she could not "state a claim against Defendants for violation of Title VII." ER 1300. Having resolved that remaining issue, the district court entered final judgment dismissing Ranza's claims against NEON and Nike on March 8, 2013. ER 1299. This timely appeal followed.

## V.  SUMMARY OF ARGUMENT

1.  <u>Applicability of Title VII and the ADEA</u>. Congress specifically stated in both Title VII and the ADEA that the statutes apply to a foreign corporation's employment of a U.S. citizen in a foreign workplace *if and only if* a domestic corporation "controls" the foreign corporation. Both statutes also set forth a specific four-part test for establishing such "control." ███████████████

[BLACK REDACTION]

[BLACK REDACTION]

[BLACK REDACTION] ER 1201.  Instead, Ranza's evidence shows nothing more than a typical parent-subsidiary relationship, which is not sufficient to establish control under either statute.  The district court, therefore, correctly dismissed Ranza's claims against NEON and Nike because neither Title VII nor the ADEA applies to NEON's employment of Ranza in the Netherlands.  ER 1295.

2.    <u>Jurisdiction</u>. The district court correctly dismissed Ranza's claims against NEON for lack of personal jurisdiction because (a) NEON does not do business in the forum state and (b) it would not in any event be reasonable to exercise personal jurisdiction over NEON.  [BLACK REDACTION]

[BLACK REDACTION]

[BLACK REDACTION]

[BLACK REDACTION] Nor would it be reasonable to exercise jurisdiction over NEON in Oregon given Ranza's previous litigation in the Netherlands and the lack of any compelling state interest in relitigating a foreign resident's claims against a foreign employer based on events that took place in the Netherlands.

3.    <u>Exhaustion of administrative remedies</u>.  Both Title VII and the ADEA require timely exhaustion of administrative remedies:  specifically, a claimant

alleging sex discrimination under Title VII or age discrimination under the ADEA must file a charge before the EEOC within 300 days of the alleged adverse action.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

She failed to file such a claim against Nike before that statutory deadline.  Her claims against Nike therefore fail on this additional basis.

4.      Dismissal on forum non conveniens grounds.  Ranza's claims against NEON and Nike are also subject to dismissal on forum non conveniens grounds.

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

5.      Ranza's motion to supplement the record.  Ranza forfeited her right to appellate review of this issue by failing to timely object to the magistrate judge's ruling.  In any event, the district court did not abuse its discretion (or otherwise err) in upholding the magistrate judge's ruling denying Ranza's motion to supplement because (a) the additional evidence should have been presented with Ranza's earlier opposition brief and (b) the evidence was in any event cumulative.

6. <u>Motion to amend</u>.  The Court need not address Ranza's argument that she should be permitted to amend her complaint on remand because no such remand is warranted here.

## VI.    ARGUMENT

### A.    Standard Of Review

1. Whether Title VII and the ADEA apply here is reviewed de novo, applying the same summary judgment standard as the district court.  *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013).

2. The Court reviews "a dismissal for lack of personal jurisdiction *de novo*."  *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011).

3. The district court's decision regarding Ranza's motion to supplement the record is reviewed (if at all) for abuse of discretion.  *Ellis v. Bhd. of Ry., Airline & S.S. Clerks,* 685 F.2d 1065, 1071 (9th Cir. 1982), *aff'd in relevant part*, 466 U.S. 435 (1984).

4.     A district court's denial of a motion to amend a complaint is reviewed "for abuse of discretion."  *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).[2]

**B.     The District Court Correctly Dismissed Ranza's Claims Because (a) Neither Title VII Nor The ADEA Is Applicable Here Unless Nike Controls NEON'S Operations And (b) Ranza Cannot Satisfy The Applicable Control Test.**

      **1.     Ranza Cannot Satisfy, And Did Not Satisfy, The Controlling Four-Part Test For Determining Whether Title VII And The ADEA Apply Here.**

The district court dismissed Ranza's claims under Title VII and the ADEA because it concluded − as the magistrate judge had recommended − that neither statute applies here.  ER 1186-1201, 1295.  Because this issue is dispositive as to both NEON and Nike, it is addressed first below.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) ("Because we find the forum-selection clause to be dispositive of this question, we need not consider petitioner's constitutional argument as to personal jurisdiction."); *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1152 n.1 (9th Cir. 1998) ("Because we affirm the district court's dismissal of the conspiracy claims against the individual defendants, we need not decide

---

    [2] Because the district court did not reach the forum non conveniens and failure to exhaust issues (ER 1296), this brief does not state a standard of review for those issues.

whether the district court had personal jurisdiction over the individual defendants.").

Congress expressly stated in both Title VII and the ADEA that the statutes apply to a foreign corporation's employment of a U.S. citizen in a foreign workplace *if and only if* a domestic corporation "controls" the foreign corporation. Addressing that issue, Title VII states that "Sections 2000e–2 and 2000e–3 of this title shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer." 42 U.S.C. § 2000e-1(c)(2). The ADEA likewise states: "The prohibitions of this section shall not apply where the employer is a foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2). These provisions expressly govern the applicability of Title VII and the ADEA to NEON.

The same control requirement also limits the applicability of both statutes to domestic corporations such as Nike. Addressing that issue, Title VII states: "If an employer controls a [foreign] corporation …, any practice prohibited by section 2000e–2 or 2000e–3 of this title engaged in by such corporation shall be presumed to be engaged in by such employer." 42 U.S.C. § 2000e-1(c)(1). The ADEA likewise states: "If an employer controls a corporation whose place of incorporation is in a foreign country, any practice by such corporation prohibited

14

under this section shall be presumed to be such practice of such employer."

29 U.S.C. § 623(h)(1).

Thus, the critical consideration as to whether Ranza can state a claim under Title VII or the ADEA against NEON or Nike is whether NEON was "controlled by" Nike during her employment. Both statutes also expressly provide the same four-part test to determine that issue:

> For purposes of this subsection, the determination of whether an employer controls a corporation shall be based on—
> (A) the interrelation of operations;
> (B) the common management;
> (C) the centralized control of labor relations; and
> (D) the common ownership or financial control,
> of the employer and the corporation.

42 U.S.C. § 2000e-1(c)(3); *see also* 29 U.S.C. § 623(h)(3) (same four-part test with minor word variations). Because it is undisputed that NEON is a foreign employer and that Ranza did not work for Nike, her claims against NEON and Nike fail as a matter of law unless she can establish a genuine issue of material fact as to whether this four-part test is satisfied here.

Although this Court has not yet applied the foregoing control test to determine whether a foreign subsidiary is controlled by a parent corporation, other circuits have held that the requisite control exists only where there is a "significant departure from the ordinary relationship between a parent and its subsidiary." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997); *Frank v. U.S. West,*

*Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) (requiring control by parent corporation "beyond the normal parent-subsidiary relationship"). In *Johnson v. Flowers Industries, Inc.,* 814 F.2d 978, 980 (4th Cir. 1987), the Fourth Circuit likewise noted that "[i]f stockholders were liable whenever they exercised their rightful control, limited liability would be a meaningless fiction because few individuals establish a corporation and then ignore it."

District courts have similarly required "uncommon" or "extraordinary" control by a parent corporation.[3] Indeed, where district courts have found a genuine issue of material fact regarding this issue, the evidence established that the parent was so atypically involved in the day-to-day operations of its subsidiary that

---

[3] *See EEOC v. Con-Way, Inc.*, No. 06-1337-MO, 2007 WL 2610367, at *2, *4 (D. Or. Sept. 4, 2007) (claims dismissed on summary judgment even though parent and subsidiary shared office space, equipment, technology, and services because that there was "nothing uncommon" about these "mutually convenient arrangements"); *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 347 (S.D.N.Y. 1997) (finding of parent control over subsidiary requires "exceptional case" of "hands-on" management) (internal quotation marks omitted), *aff'd on other grounds*, 166 F.3d 1199 (2d Cir. 1998); *Herman v. Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 308, 311 (S.D.N.Y. 1998) (contract by parent to provide human resource and personnel services to subsidiary insufficient to establish "extraordinary circumstances" absent evidence that the parent actually participated in labor relations or human resource decisions), *aff'd*, 182 F.3d 899 (2d Cir. 1999); *Tatum v. Everhart*, 954 F. Supp. 225, 229 (D. Kan. 1997) (separate entities viewed as one employer under Title VII and ADEA only if "extraordinary circumstances").

the parent itself was responsible for the plaintiff-employee's termination.[4]  These

cases are consistent with this Court's general admonition that "[i]n the absence of

special circumstances, a parent corporation is not liable for the Title VII violations

of its wholly owned subsidiary."  *Watson v. Gulf & W. Indus.*, 650 F.2d 990, 993

(9th Cir. 1981).

Applying the four-part control test here, it is clear that Title VII and the

ADEA do not apply to NEON's employment of Ranza in the Netherlands.  Starting

with the first prong of the test − "the interrelation of operations" of the foreign

employer and domestic corporation – courts have generally examined whether a

parent corporation managed accounts, issued paychecks, and paid bills for the

subsidiary and whether the two corporations shared employees, headquarters,

advertising, services, and equipment.  *See Frank*, F.3d at 1363; *Johnson*, 814 F.2d

at 981.  The law is equally clear that mere oversight of a subsidiary's projects by

parent company officers does not establish interrelationship.  *Johnson*, 814 F.2d  at

982.

---

[4] *See Levine v. Reader's Digest Ass'n, Inc.*, No. 06 CIV. 590 (CLB), 2007 WL 4241925, at *7 (S.D.N.Y. Nov. 30, 2007) (claim may proceed to jury where evidence establishes "Defendant directed and implemented the corporate restructuring plan that allegedly led to the Plaintiff's termination"); *Rajoppe*, 2007 WL 846671, at *6  (claim survives motion for summary judgment where evidence establishes parent "played a role both in the day-to-day employment decisions of [the subsidiary], as well as in the corporation's hiring and firing of the plaintiff himself").

The record squarely refutes any such interrelationship:

-  (SER 4-5; SEALED SER 18),

- (ER 317-18, 329-30; SER 4),

- (ER 297, 311-12, 327; SER 5; SEALED SER 2, 14, 19-20),

- (SEALED SER 21), and

- (ER 303-04, 306-07, 344-92, 744-53; SEALED SER 22).[5]

On this record, Ranza has not established − nor can she establish − any sort of interrelation of operations beyond Nike's "rightful control" over a subsidiary, which is legally insufficient to establish the requisite interrelation of operations. *See Johnson*, 814 F.2d at 980.

Turning to the second prong of the applicable legal standard − "the common management" of the foreign employer and domestic corporation − courts have recognized that some common management is inherent in the parent-subsidiary

---

[5] The facts in the above discussion relate to the 1996-2008 time period during which Ranza was employed by NEON. *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 205 (1997) ("[entity] was subject to Title VII, however, only if, *at the time of the alleged retaliation*, it met the statutory definition of 'employer'" (emphasis added)).

relationship and have therefore looked for some "nexus to … daily employment decisions." *Lusk*, 129 F.3d at 778. 

ER 268, 271.

ER 1197.

Regarding the third prong − "the centralized control of labor relations" of the foreign employer and domestic corporation − courts addressing this prong have likewise recognized that the prong is not satisfied if the parent corporation exercises appropriate oversight over a subsidiary by establishing "broad policies" for human resources (*Frank*, 3 F.3d at 1363), administering a subsidiary's benefits plan (*id.*), and participating in the selection of directors and executive officers (*Lusk*, 129 F.3d at 778; *Johnson*, 814 F.2d at 982).[6] Instead, such control must be "extraordinary." *Johnson*, 814 F.2d at 981. This Court has described this prong as the "most critical" of the four factors (*Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815

---

[6] *See also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991) (no centralized control of labor by franchisor that "controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees").

(9th Cir. 2002) (internal quotation marks and citation omitted)), so the absence of evidence of "extraordinary" centralized control of labor relations weighs heavily against Ranza's claims.

The record here does not establish any such extraordinary centralized control of NEON's labor relations by Nike. ███████████████████████

███████████████████████████████████████████████████

SER 5. ████████████████████████████████████████

███████████████████████████████████████████████████

██████ ER 300, 1036-37. ██████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ (SEALED SER 2, 19), ██

█████████████████████████████████████ (ER 294),

███████████████████████████████████████████████

██████████████████ (SEALED SER 19). █████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ ER 1200.

Finally, the fourth prong − "the common ownership or financial control" of the foreign employer and domestic corporation − is accorded little if any weight.

*See Frank*, 3 F.3d at 1364 ("[T]his factor, standing alone, can never be sufficient to establish parent liability."); *Johnson*, 814 F.2d at 982 (same).  As a result, the fact that NEON is a subsidiary of Nike is not sufficient to establish that Title VII and the ADEA apply here.  The district court, therefore, did not err when it "reviewed the pertinent portions of the record *de novo*" and did "not find any error in the Magistrate Judge's Findings and Recommendation" that Ranza's Title VII and ADEA claims against NEON and Nike be dismissed based on Ranza's failure to establish a genuine issue of material fact on the question of whether Nike "controls" NEON.  ER 1295.

**2.  Ranza's Arguments Regarding The Applicability Of Title VII And The ADEA Are Both Legally and Factually Flawed.**





ER 269; SER 5, 24.




[8] In addition, the

---

[8]



ER 1186

ER 1295.



ER 338.

ER 338-39.

ER 680-81.

(ER 838)



- ██████████████████████████████████
  ██████████████████████████████████
  ██████ ER 850. ████████████████████
  ██████████████████████████████████

- ██████████████████████████████████
  ██████████████████████████████████
  ██████ ER 851. ████████████████████
  ██████████████████████████████████ ER
  295.

- ██████████████████████████████████
  ██████████████████████████████████
  ██████████████ ER 655.[9] ███████████
  ██████████████████████████████████

- ██████████████████████████████████
  ██████████████████████████████████
  ██████████████████████████████████

---

[9] *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) (trademark holder must assure quality of goods bearing its mark).

████████████████████████████████████████ ER 344-47.

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████

In short, the record shows that Nike's relationship with NEON was well within the bounds of typical parent company oversight of a subsidiary. The district court, therefore, correctly agreed with the magistrate judge that Ranza's claims against both NEON and Nike should be dismissed based on Ranza's failure to establish a genuine issue of material fact on the question of whether Nike "controls" NEON. ER 1186-1201, 1295.

---

[10] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

**C. If This Court Does Not Affirm The District Court's Dismissal Of Ranza's Claims Based On Ranza's Failure To Establish That Title VII And The ADEA Are Applicable Here, It Should Affirm Based On Lack Of Personal Jurisdiction, Failure To Exhaust Administrative Remedies, And/Or Forum Non Conveniens Grounds.**

**1. The District Court Correctly Dismissed Ranza's Claims Against NEON Based On Lack Of Personal Jurisdiction.**

███████████████████████████████████████, the district court also dismissed Ranza's claims against NEON for lack of personal jurisdiction. ER 1181-86, 1295. That ruling should be affirmed because (a) NEON does not do business in the forum state and (b) it would not in any event be reasonable to exercise personal jurisdiction over NEON. Consistent with this Court's case law, appellees first address reasonableness, which is independently dispositive on this point. *See Amoco Egypt Oil. Co. v. Leonis Navigation Co.,* 1 F.3d 848, 851 (9th Cir. 1993) ("Because we conclude that the exercise of personal jurisdiction over Leonis would be unreasonable, we need not address the issue of contacts."). Appellees then address the minimum contacts analysis. For either or both of these reasons, the district court correctly concluded that "the Court lacks personal jurisdiction as to NEON." ER 1298. That ruling should be affirmed.

**a. The District Court Correctly Found That The Exercise Of Personal Jurisdiction Over NEON Is Not Reasonable.**

As the Supreme Court explained in *Asahi Metal Industry Co. v. Superior Court of Cal.,* 480 U.S. 102 (1987), "the Due Process Clause forbid[s] a … court

[from] exercis[ing] personal jurisdiction … under circumstances that would offend 'traditional notions of fair play and substantial justice.'" *Id.* at 113 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). To satisfy that constitutional requirement, the exercise of jurisdiction must be "reasonable." *Id.*; *Amoco Egypt Oil,* 1 F.3d at 851 (same).

The Court in *Asahi* identified five factors to determine "reasonableness":

(1)     "the burden on the defendant,"

(2)     "the interests of the forum State,"

(3)     "the plaintiff's interest in obtaining relief,"

(4)     "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,'" and

(5)     "'the shared interest of the several States in furthering fundamental substantive social policies.'"

*Asahi,* 480 U.S. at 113 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980)). In addition, "[t]he Ninth Circuit considers two other factors in assessing the reasonableness of jurisdiction: the extent of purposeful interjection and the existence of an alternative forum." *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1175 n.5 (9th Cir. 2006).

The Supreme Court's opinion in *Asahi* is especially instructive regarding the reasonableness inquiry here because it involved a foreign defendant. The Court emphasized the "unique burdens placed upon one who must defend oneself in a foreign legal system" and added that these burdens "should have significant weight

in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114. Also relevant here, the Court explained that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115 (internal quotation marks and citation omitted). In *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993), this Court similarly recognized that "litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state."

The *Asahi* Court's discussion of the reasonableness factors appropriately recognizes this heightened jurisdictional barrier. The Court observed, for example, that "[b]ecause the plaintiff is not a [forum state] resident, [the forum state's] legitimate interests in the dispute have considerably diminished." *Asahi,* 480 U.S. at 114. The Supreme Court ultimately concluded: "Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over [defendant] in this instance would be unreasonable and unfair." *Id.* at 116.

The same reasoning and result are applicable here. Starting with the first *Asahi* factor – the burden on NEON – NEON is a foreign corporation that is not registered to do business, does not sell products, and does not own or lease real

estate in Oregon.  SER 3, 5.  The burden on NEON of litigating in Oregon is

particularly great in the employment context because NEON would be required to

balance its discovery obligations under U.S. law with its extensive obligations

under Dutch law to ensure the confidentiality of personnel information.  SER 6.

These burdens are entitled to "significant weight" in the reasonableness inquiry.

*Amoco Egypt Oil,* 1 F.3d at 852 (citing *Asahi,* 480 U.S. at 114).

The second factor – the interest of the forum state – also shows that

exercising jurisdiction over NEON would be unreasonable.  Oregon does not have

an interest in adjudicating claims against NEON, a Dutch private limited liability

company.  SER 3. ████████████████████████████████████

██████████████████████████████████████████████ ER 2-

3; Op.Br. 6; SER 6.  Ranza's claims also do not relate to or arise from conduct in

Oregon:  all relevant events occurred in the Netherlands.  ER 3-4; SER 6.  ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████  ER 3, 867.

On similar facts, both the Supreme Court and this Court have appropriately

recognized that the forum state has no colorable interest in adjudicating a dispute.

*See Asahi*, 480 U.S. at 114 (state's interest in adjudicating claim is "considerably

diminished" where plaintiff is not a resident of the forum state); *Amoco Egypt Oil,*

1 F.3d at 852 (Washington had "no interest" in adjudicating claim where "[t]he vessel involved in the accident was not sailing from Washington and carried no Washington cargo. Neither the accident nor the lawsuit's outcome has any effect on Washington or its residents."). This, too, "weighs heavily against the reasonableness" of exercising jurisdiction. *Amoco Egypt Oil*, 1 F.3d at 852.

The third factor – "the plaintiff's interest in obtaining relief"– likewise shows that exercising jurisdiction over NEON would be unreasonable. Ranza's interest in litigating in Oregon is her desire for a U.S. forum. ███████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

The fourth *Asahi* factor – efficiency – also shows that exercising jurisdiction over NEON would be unreasonable. This Court has repeatedly recognized that "'[t]he site where the injury occurred and where evidence is located usually will be

the most efficient forum.'" *Amoco Egypt Oil,* 1 F.3d at 852 (quoting *Pac. Atl.*

*Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1331 (9th Cir. 1985)). Further,

not only did Ranza have an alternative forum available to her in the Netherlands,

she actively pursued her claims in that forum. *See* discussion on pages 5-6 above.

It would be both inefficient and a waste of limited resources to *relitigate* Ranza's

claims in Oregon.

The fifth factor – "the shared interest of the several States in furthering

fundamental substantive social policies" – also does not favor the exercise of

jurisdiction here. Litigation in Oregon would directly conflict with the sovereign

powers of the Netherlands, ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ SER 7; SEALED

SER 6-7. As in *Fields*, Oregon has no plausible interest in interfering with Dutch

sovereignty.

Finally, the "two other factors" that this Court considers – "the extent of

purposeful interjection and the existence of an alternative forum" (*Tuazon,* 433

F.3d at 1175 n.5) – also show that the exercise of jurisdiction in this case would be unreasonable. The first of these two factors "parallels the question of minimum contacts." *Id.* (internal quotation marks and citation omitted). ███████

████████████████████████████████████████████████

The second factor "asks whether an adequate alternative forum exists for the resolution of the dispute." *Id.* Here, as noted, Ranza not only had an alternative forum in the Netherlands, she litigated her claims there and filed suit in Oregon only *after* she failed to establish her claims in that *appropriate* forum. These additional considerations, like the others, clearly show that exercising jurisdiction over NEON is unreasonable.





*See, e.g.,* Dkt. 66; ER 759.

*See* Dkts. 9, 27.

ER 867-68, 1048.



SER 7.

SEALED SER
6-7.

In short, all of the relevant factors uniformly show that the exercise of jurisdiction over NEON in this case would be unreasonable. The district court, therefore, did not err when it adopted the magistrate judge's analysis regarding the reasonableness issue and concluded that "the Court lacks personal jurisdiction as to NEON." ER 1181-86, 1291. As in *Amoco Egypt Oil* (*see* page 28 above), this Court can properly affirm the district court's dismissal order on this basis alone.

### b. The District Court Correctly Found That NEON Is Not Subject To Jurisdiction In Oregon Because It Does Not Have Continuous And Systematic Contacts With Oregon.

#### i. Because NEON's Oregon Activities Do Not Approximate Physical Presence In Oregon, It Is Not Subject To General Jurisdiction There.

Even if it were reasonable to exercise personal jurisdiction over NEON, the district court also correctly dismissed Ranza's claims against NEON – ███ ████████████████████████ – because NEON does not have sufficient contacts with Oregon to establish personal jurisdiction. ER 1163-68, 1295. The bounds of personal jurisdiction in Oregon are coextensive with federal due process limitations. ER 1162 n.7; Or. R. Civ. P. 4 L. The relevant inquiry, therefore, is whether the exercise of jurisdiction is consistent with due process principles. *See CollegeSource,* 653 F.3d at 1073. In addition, the sole issue is general jurisdiction, as all relevant events occurred outside Oregon and ███████████████ (nor did the district court analyze) specific jurisdiction.

The Supreme Court's discussion and application of general jurisdiction principles in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), is directly on point. The Court there began by noting that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the

forum State." *Id.* at 2851 (internal quotation marks and citation omitted).

Applying that test, the Court held that "North Carolina is not a forum in which it would be permissible to subject petitioners to general jurisdiction" because the foreign subsidiary was not registered to do business in the forum; did not have a place of business, employees, or bank accounts in the forum; did not design, manufacture, or advertise products in the forum; and did not solicit business in the forum. *Id.* at 2857.

This Court's opinion in *CollegeSource* is also on point. Similar to *Goodyear*, the Court recognized in *CollegeSource* that "[f]or general jurisdiction to exist over a nonresident defendant such as AcademyOne, the defendant must engage in continuous and systematic general business contacts … that approximate physical presence in the forum state." 653 F.3d at 1074 (internal quotation marks and citations omitted). The Court emphasized that "[t]he standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* (internal quotation marks and citation omitted). The Court ultimately concluded that the plaintiff had not satisfied this exacting standard because "AcademyOne has no offices or staff in California; is not registered to do business in the state; has no registered agent for service of process; and pays no state taxes." *Id.*

Ranza has not satisfied – and cannot satisfy – this exacting standard either.

That is so for numerous reasons:

-  ER 619; SER 4-5.

- SER 5; SEALED SER 18.

- SEALED SER 18.

- ER 261. SER 5; SEALED SER 18.

On these facts, similar to *Goodyear* and *CollegeSource*, the district court correctly concluded that Oregon is not a forum in which it would be permissible to subject NEON to general jurisdiction.  ER 1163-68, 1295.

> **ii.  Ranza's Arguments Regarding NEON's Oregon Contacts Are Factually And Legally Insufficient To Establish General Jurisdiction.**



███████████████████████████████████████

████████████████████████████████ SEALED SER 9-10.

███████████████████████████████

██████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████

█████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████████████████████████

█████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████



SEALED SER 18.

ER 367, 377.

### iii. Ranza's Attempt To Establish That NEON Can Be Subject To General Jurisdiction In Oregon Based On Nike's Contacts With The Forum Similarly Fails.



███████████████████████████████████████

█████████████████████████████████████████

█████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

█████████████████████████████ SEALED SER 17-18. ██████

████████████████████████████ SER 24. ███████

████████████████████████████████████████

███████████████ SER 4-5, 24; SEALED SER 18. ███

SEALED SER 3. 

SEALED SER 29.

[11]

[footnote marker 11]

[11]

44

SEALED SER 3.

SEALED SER 29.



[11]

---

[11]



[12]

(ER 1168-79),



\* \* \*

███████████████ For all these reasons, even if the Court were to conclude that Title VII and the ADEA apply to NEON's employment of Ranza in the Netherlands, Ranza's claims against NEON were properly dismissed for lack of jurisdiction.

### 2. Ranza's Claims Against Nike Are Barred Because She Failed To Timely Exhaust Her Administrative Remedies Before The EEOC.

If the Court does not affirm the district court's dismissal of Ranza's claims against Nike based on her failure to establish that Title VII and the ADEA apply to NEON's employment of Ranza in the Netherlands, it should affirm that ruling based on Ranza's failure to timely exhaust her administrative remedies against Nike before the EEOC. ████████████████████████████████████

████████████████████████████████████████████████████

███████████ ER 1205-09; Dkt. 136 at 18-19. The district court, in turn, expressly declined to consider the magistrate judge recommendation because it dismissed Ranza's claims against Nike based on inapplicability of Title VII and the ADEA. ER 1296. This Court, though, "may affirm the district court's holding on any ground raised below and fairly supported by the record." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013) (internal quotation marks and citation omitted). Ranza's failure to exhaust administrative remedies is one such ground.

Both Title VII and the ADEA require timely exhaustion of administrative remedies. Congress expressly required a claimant alleging sex discrimination under Title VII to file a charge in writing and under oath or affirmation before the EEOC within 300 days. 42 U.S.C. § 2000e-5(b), (e)(1). The ADEA likewise requires that age discrimination claims be filed before the EEOC within the same 300-day period. 29 U.S.C. §§ 626(d)(1), 633(b).[14] The Supreme Court has interpreted these provisions to bar Title VII and ADEA claims from proceeding in federal court unless the plaintiff timely filed such an administrative claim. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008) (ADEA); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (Title VII). The purpose of this exhaustion requirement is to channel grievances to the EEOC for "cooperation and voluntary compliance" rather than to litigation. *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367 (1977) (internal quotation marks, brackets, and citation omitted).

In this case, Ranza's claims against Nike are barred because she did not file a charge against Nike before the EEOC until after the statutory window had closed.

██████████████████████████████████████████████████

---

[14] In some instances, a charge must be filed under Title VII and the ADEA in less than 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). The Court need not decide whether a shorter deadline is applicable because Ranza did not satisfy even the longest (300-day) deadline.



ER 868; SEALED SER 39, 42, 43.

SEALED SER 45. Consequently, she failed to timely exhaust her administrative remedies against Nike and her claims against Nike fail on this additional basis.

*See* SEALED SER 35-44.





SEALED SER 41-44.

*See id.*

[16]

Nor can Ranza credibly argue that adding Nike to her charge against NEON

was merely a "technical amendment." EEOC regulations permit such amendments

---

[16] ER 89-90. In *EEOC v. National Education Ass'n*, 422 F.3d 840, 847 (9th Cir. 2005), the Court concluded that the record was not sufficiently developed to determine whether a national organization was involved in the discriminatory acts charged against a local affiliate and remanded for further fact-finding. Here, there is no such deficiency. In *Ortez v. Washington County*, 88 F.3d 804 (9th Cir. 1996), and *Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir. 1990), the Court examined whether a charge against the employer was sufficient to exhaust administrative remedies regarding the employees who committed the challenged acts. No such question is presented here.



**3.** **Ranza's Claims Against NEON And Nike Are Also Subject To Dismissal On Forum Non Conveniens Grounds.**

ER 1209-17.  Although the district court did not

reach the issue (ER 1296), this Court can properly affirm on this alternative

ground.  *See Columbia Pictures*, 710 F.3d at 1030 (quoted on page 47 above);

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007)

(court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction").

A case should be dismissed on forum non conveniens grounds when there exists an adequate alternative forum and the balance of private and public interest factors favors dismissal. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). A forum is adequate if it can provide the plaintiff something greater than "no remedy at all," even if the substantive law is less favorable to the plaintiff and the remedies less generous than in the plaintiff's chosen forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). Indeed, this Court has held that even a "considerable difference in potential recovery, as well as in the cost of pursuing [an] action," do not make a forum inadequate. *Loya*, 583 F.3d at 666. The private and public interest factors, in turn, relate generally to the location of witnesses and evidence, where the claim arose, and the interests of the putative forum.[17]

---

[17] The private interest factors are: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of hostile witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; [and] (4) all other factors that render trial of the case expeditious and inexpensive." *Loya*, 583 F.3d at 664 (internal quotation marks and citation omitted). The public interest factors are: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law." *Id.* (internal quotation marks and citation omitted).

Applying these principles here, it is clear that Ranza's claims can properly

be dismissed on forum non conveniens grounds 

ER 1001,

1005-06, 1012, 1015, 1020; SEALED SER 6-7.

- ER 1034, 1041; SER 4.

- ER 867-68, 1048.

- ER 868, 1001; SER 5-6, 8-22.

- (ER 1215) [18]

- SER 6.

---

[18] *See Loya*, 583 F.3d at 665 (affirming dismissal on forum non conveniens grounds where district court "found no cause to burden Washington jurors with this litigation given that most of the allegedly wrongful conduct took place in Mexico and among non-Washington defendants").

54

██████████████████████████████████████████████████

██████████████████████████████████████

In short, ████████████████████████████████████████

████████████████████████████████████████████ the

claims are *also* subject to dismissal on forum non conveniens grounds.

**D.** **Ranza's Remaining Arguments – Regarding Her Motion To Supplement The Record And Amend The Complaint On Remand – Do Not Require Reversal Either.**

    **1.** **Even If Ranza Had Preserved Her Argument Regarding The Magistrate Judge's Ruling Denying Her Motion To Supplement The Record (Which She Did Not), The District Court Did Not Abuse Its Discretion Or Otherwise Err In Upholding That Ruling.**

████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

ER 1134. ████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

    If the Court reaches the issue, it should affirm. As noted on page 12 above, the ruling is reviewed for abuse of discretion. Ranza has not identified any reason

why the Articles of Association, which Nike and NEON had produced months

earlier, could not have been included with Ranza's original briefing.  *See* SER 1-2.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  ER 37.  This argument was not presented by

appellees for the first time on reply, and it was not an abuse of discretion to deny

Ranza's motion to supplement the record after briefing was complete.

Nor can Ranza establish prejudice.  *See Leishman v. Radio Condenser Co*.,

167 F.2d 890, 893 (9th Cir. 1948) ("Assuming, therefore, without deciding, that it

was error to deny the motion [to file a supplemental complaint], Leishman was not

prejudiced thereby.").  ████████████████████████████████

████████████████████████████████████████  ER 999-1002,

1032-38, 1040-41; SEALED SER 5-7.  ████████████████████

████████████████████████████████████  ER 1186, 1209-

13, 1297.  ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████ [19]

---

(continued . . .)

**2.    The Court Need Not Address Ranza's Argument That She Should Be Permitted To Amend Her Complaint On Remand Because No Such Remand Is Warranted Here.**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

## VII.   CONCLUSION

Just as she did in the district court, Ranza continues to cite endless minutiae to give the false appearance of disputed fact issues. As set forth above, the district court correctly saw through Ranza's arguments and properly dismissed her claims against both NEON and Nike. This Court should affirm.

---

(. . . continued)
███ ER 1268. ████████████████████████████████████████
████████████ ER 64-159; Dkts. 98-102, 104-07. ███████
████████████████████████████████████████████████████████
████████████████████████████████████

DATED:  September 24, 2013.    Respectfully submitted,

STOEL RIVES LLP

/s/ *Leonard J. Feldman*
Leonard J. Feldman
Charles E. Gussow
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(T) (206) 624-0900
(F) (206) 386-7500

Amy Joseph Pedersen
Laura E. Rosenbaum
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
(T) (503) 224-3380
(F) (503) 220-2480

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellees state that they are not aware of any related case pending in this Court.

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Form 6. Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains <u>13,707</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    ❑ this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

    ❑ this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: September 24, 2013.

By: <u>/s/ *Leonard J. Feldman*</u>
      Leonard J. Feldman
      WSBA No. 20961

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that on the 24th day of September, 2013, I electronically filed the foregoing **Redacted Appellees' Answering Brief (Public Copy)** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 24, 2013.

*/s/ Leonard J. Feldman*
Leonard J. Feldman